# Citizens Development Company v. Kypawva Oil Company.

(Decided March 25, 1921.)

## Appeal from Warren Circuit Court.

1. Landlord and Tenant—Unrecorded Oil Lease.—An unrecorded oil lease does not afford notice to the public of its existence, and if a second lease is taken in good faith upon the same tract of land, without actual knowledge of the existence of the first lease, the junior contract will prevail.

2. Principal and Agent—When Knowledge of Defect in Title not Imputed to Principal.—The mere fact that one is secretary of an oil company does not make him an agent for the purchase of oil lands or leases, and his knowledge of the defects in title in such case is not imputable to the company where the company has other competent officers who represent it in the deal.

3. Principal and Agent—Agent's Authority—Subagent.—An agent has not authority ordinarily to employ a subagent, nor is the knowledge of the subagent imputed to the principal, for there is no privity between them.

GAINES & GARDNER for appellant.

HERDMAN & ROPER and HANEY & MARTIN for appellee

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The appellee, Kypawva Oil Co., is the assignee of an oil and gas lease of date February 23, 1917, executed by J. S. Grinstead and wife on a tract of forty acres of land in Warren county, and appellant, Citizens Development Co., is the assignee of a junior lease on the same property dated March 14, 1919.

Both leases were properly executed by Grinstead and wife. The lease contracts provide for yearly rentals in case development is delayed. About the end of the second year Grinstead received through the mail an envelope containing his oil lease of date February 23, 1917, and a check for $8.40, the amount of the yearly rentals due him on the original lease, but there was no letter of explanation in the envelope. This was about February 10, 1919. Grinstead immediately returned the check to the appellee company and retained the lease, which had not been recorded, thinking it surrendered by the company. On the 14th of March following, Grinstead, not having heard further from the company holding the senior lease and thinking the lease had been intentionally surrendered by appellee, made a second lease

to one Gardner. In taking the lease one Simpson acted
for Gardner. At the time the second lease was executed
Grinstead exhibited the senior lease to Simpson, the
agent of Gardner, and told him about its receipt through
the mail, and the check that accompanied it. Before
Simpson took the lease on the Grinstead lands he ap-
proached Gardner and told him about the lease and the
price at which it could be obtained, but withheld from
him all information concerning the first lease. Gardner
agreed to buy the lease and to give Simpson ten dollars
to get it for him, and the lease was taken in Gardner's
name, but Simpson paid Grinstead out of his own money
for the lease and Gardner afterwards reimbursed him.
Seven days after the lease was made to Gardner he sold
it to appellant, Citizens Development Co., for a valuable
consideration. As Gardner was at that time the secre-
tary of the Citizens Development Company it is con-
tended by appellee that he acted for and on behalf of his
company in engaging Simpson to buy the Grinstead
lease, and therefore Simpson was the agent or sub-
agent of the appellant company, and his knowledge of
the existence of the senior lease on the land is imputable
to the company, which would take away its defense of
innocent purchaser. As the senior lease was not re-
corded, and Gardner did not have actual knowledge of
the existence of that lease at the time he took the sec-
ond lease through Simpson, the appellant, Citizens De-
velopment Company, having no actual knowledge of the
first lease, can only be charged with knowledge of the
existence of that lease provided Gardner was the agent
of the appellant company, with authority to, and did
engage Simpson as a subagent.

Simpson was engaged in the business of taking and
selling leases. He did not work for appellant company
nor Gardner, but when he found he could get a lease on
the Grinstead farm at two dollars per acre he began to
look for some one to whom he could sell it at a profit.
After interviewing Grinstead about the lease he went
to see two or three persons to sell the lease, or to get
them to furnish the money to buy and pay for the lease
and also to pay for his time and services. All refused
the offer except Gardner, who agreed to pay for the lease
and give Simpson ten dollars for his services. Before
this Simpson had no connection whatever with Gardner.
According to the evidence Gardner bought the Grin-
stead lease entirely on his own account and paid for it

with his own money, and later sold it to the Citizens Development Company. He did not buy it as the agent of that company, nor for it.  He had the legal right to . buy the lease and sell it to the company of which he was secretary.  He is not shown to have been the general manager, purchasing agent or business manager of the company or to have had charge of its offices.  He was not, therefore, the agent of the appellant company to buy the Grinstead oil lease, and not being its agent the knowledge of Simpson, his agent, cannot be imputed to the company.  Appellee company only contends that Simpson was the subagent of the company, but before this could be true Gardner would have to have the power as agent of the company to appoint or employ such a subagent.  Ordinarily an agent cannot delegate his authority or employ a subagent, because his employment is in the nature of a personal confidence or faith which the principal reposes in the agent and can not be delegated— the maxim being, *delegatus non potest delegare.*  In the absence of authority an agent cannot employ a subagent, for the trust committed to the agent is exclusively personal, and if the agent attempts to employ a subagent without the authority so to do, the principal is not bound by the acts of the subagent, nor is the knowledge of the subagent imputed to the principal, for there is no priority between them.  Bates v. Mortgage Co., 21 L. R. A. 340, 2 C. J. 872; 21 R. C. L. 838.

In the absence of proof to the contrary we must assume that Gardner acted for himself as an individual in buying the Grinstead lease as set forth in his testimony.  If he did so act and afterwards sold and transferred the lease to appellant, Citizens Oil Co., for a valuable consideration, neither his nor Simpson's knowledge of the existence of the senior lease can be imputed to the company.

Appellee company insists that Gardner had no right, he being secretary of the Citizens Development Co., to sell a lease to the company at a profit or to deal in any way in oil leases while his company was engaged in like business, but this contention cannot be sustained.  An officer can deal with the corporation if he does so fairly and honestly and the corporation was represented by other competent and authorized officers or agents, 14a C. J. 115.  There is nothing whatever in the record in the case before us to indicate that Gardner did not deal

fairly with appellant company, and the company is not complaining. Nor is it shown that there was not other competent officers and agents of the company who represented it in the purchase of the oil lease in question. That the lease was a good purchase for the company appears conclusively from the record.

Moreover the secretary of a corporation is merely a ministerial officer who keeps the books and minutes of the stockholders' and directors' meetings and has charge of the seal of the company. He has no power to act for the corporation in the purchase of property, without special authority so to do. The presumption in the absence of a contrary showing is that the secretary performs only the usual and customary duties of such official to a corporation and no more, 14a C. J. 94.

As the trial court reached the erroneous conclusion that Gardner was the agent of the Citizens Development Co. in the purchase of the Grinstead lease, and the knowledge of Simpson, subagent, was the knowledge of the company, thus rendering the company a purchaser with constructive knowledge of the defects in the title of Grinstead to the lease, and lack of power in him to make the second lease, the judgment must be reversed with directions to set it aside and enter in lieu thereof a judgment sustaining the second lease, for as the first lease was not recorded and the development company was an innocent purchaser for value of the second lease, the equities are largely on its side.

Judgment reversed.