## Main Street Tobacco Warehouse Company v. Bain Moore Tobacco Company.

## Same v. Growers Tobacco Warehouse Company.

(Decided April 27, 1923.)

### Appeals from Franklin Circuit Court.

1. Corporations—Bookkeeper has no Authority to Bind Company by Agreement.—The bookkeeper of a corporation is a mere clerical employe, and, unless given general authority by the corporation or special authority with reference to the particular transaction, he cannot bind the corporation by his agreement made for it.

2. Corporations—Person Dealing With Agent Must Ascertain His Authority.—It is incumbent upon the one dealing with a corporation to look to the authority of the person with whom he is dealing, if he seeks to bind the corporation.

3. Principal and Agent—Agency Cannot be Shown by Declarations of Agent.—A person cannot be shown to be the agent of an individual or of a corporation by the mere statements of the one claiming to be the agent.

4. Corporations—Failure to Give Notice of Termination of Agency Held Immaterial.—Where the president of a corporation had employed an agent to buy tobacco for him personally, to be paid for by drafts on the corporation, the president's failure to notify sellers of termination of the agent's authority did not entitle the sellers to hold the corporation liable, since it had never appointed the agent, even though its bookkeeper had without authority stated that the corporation would honor the drafts of the agent.

5. Corporations—Honoring Two Drafts Does not Impose Obligation to Honor Subsequent Drafts.—The fact that a corporation had honored two drafts drawn upon it for tobacco purchased by an agent of its president under an agreement with the president to reimburse it for such drafts does not impose any obligation on it to honor similar drafts by the agent after his authority was terminated, even though no notice of the termination of the authority was given the payees of the drafts.

HOBSON & HOBSON and E. J. McDERMOTT for appellant.

PAUL GAINES and BRADLEY & BRADLEY for appellees.

Opinion of the Court by Turner, Commissioner—
Reversing on each appeal.

These two actions were instituted by the two appellees as plaintiffs against the same defendants, on the same day. They grow essentially out of the same facts, and were tried together upon the same evidence in the trial court, and will be heard and disposed of together in this court, as they present the same questions.

In the original petitions a firm said to be composed of N. J. Hitz and —— Dannenhold, under the firm name of Hitz & Dannenhold, were the only defendants except that appellant, Main Street Tobacco Warehouse Company, and others were named as garnishee defendants, and certain property alleged to be in the custody of the garnishee defendants was sought to be attached and subjected to the claims of the two plaintiffs against the firm of Hitz & Dannenhold.

Each of the plaintiffs alleged in its original petition that the firm of Hitz & Dannenhold were tobacco buyers and was indebted to each of them in the sums named for tobacco purchased by the firm upon the floors of their respective warehouses at Frankfort, and that the plaintiff had paid for such tobacco and furnished same to that firm at its special instance and request.

Thereafter, by agreement, certain tobacco attached and belonging to N. J. Hitz was sold and the proceeds credited on the claims of the two plaintiffs. About three months after the filing of the original petition an amended petition was filed wherein it was alleged in one paragraph that the defendant Hitz as agent for J. F. Dannenhold and the Main Street Tobacco Warehouse Company had purchased from the plaintiffs certain tobacco for which Hitz on behalf of Dannenhold and the Main Street Company had promised and agreed to pay, and prayed a judgment against each of those defendants for the balance unpaid. In a second paragraph it is alleged that Hitz, Dannenhold and the Main Street Tobacco Warehouse Company were partners engaged in the buying of tobacco, and as such partners purchased the tobacco from the plaintiff, and prayed judgment against them as the members of such partnership for the balance due.

Some months later a second amended petition was filed wherein it was alleged that the defendants and each of them had promised and agreed to pay for such tobacco as Hitz purchased from the plaintiffs, and said promise

and agreement so made was part of the consideration of these sales, and that the plaintiffs had relied on such promise and agreement at the time such sales were made, and same would not have been made but for such agreement.

In separate answers each of the defendants denied either that they were partners of Hitz in the purchase of the tobacco, or that Hitz was the agent of either of them in purchasing the same, or that they or either of them had promised or agreed to pay the plaintiffs or either of them for such tobacco as Hitz might purchase.

On the trial the court gave a peremptory instruction to find for the defendant Dannenhold, but submitted the case as to the defendant Main Street Tobacco Warehouse Company. The jury returned a verdict for each plaintiff against that defendant for the full amount of its claim, and the defendant's motion and grounds for a new trial were overruled and it has appealed.

The action of the court in directing a verdict for Dannenhold is not involved, there being no appeal from such action and Dannenhold not being a party to this appeal.

The plaintiffs were each conducting tobacco warehouses in Frankfort, Kentucky, and selling tobacco therein at public auction, and Hitz was a tobacco buyer who had theretofore bought tobacco on that market for himself and others.

The only question necessary to consider is whether this appellant was entitled to the directed verdict for which it asked, and which the trial court refused, although it may be proper to say that the trial court, after the directed verdict for Dannenhold, in its instructions eliminated the question of partnership and agency between appellant and Hitz, and only authorized a recovery if the jury should believe that appellant promised and agreed to pay plaintiffs for such tobacco as Hitz should purchase on their respective floors, and that the plaintiffs relied upon such agreement and promise in the sales to Hitz.

The court gave only two instructions at the instance of the plaintiffs, numbers one and two. In the first instruction the jury was authorized to return a verdict for the plaintiffs only if the defendant, Main Street Tobacco Warehouse Company, had promised and agreed to pay the plaintiffs for such tobacco as Hitz might buy, and that the plaintiffs sold the same to Hitz in reliance upon such promise or agreement. In the second instruction

the jury were told that although they might believe that the authority of Hitz had been revoked, still if they believed the defendant Warehouse Company had told plaintiffs that it would pay for such tobacco as he might purchase, and that plaintiffs had no notice or knowledge of the withdrawal of Hitz's authority to purchase tobacco, they would still find for the plaintiffs.

It will be observed that in these instructions offered by the plaintiffs and given by the court the question of partnership between appellant and Hitz was ignored as well as the question of Hitz's agency; and the right to recover was confined wholly to the issue whether appellant had promised plaintiffs to pay for such tobacco as Hitz might purchase. There was no competent evidence of a partnership between appellant and Hitz, nor was there any competent evidence of agency of Hitz to purchase tobacco for appellant. And these issues the court properly failed to submit.

But the question remains was there any competent evidence to show that appellant promised or agreed with the plaintiffs or either of them that it would pay for such tobacco as Hitz should purchase?

Hitz was insolvent and known by the officers of each of the Frankfort warehouses to be so. Consequently, about the time the sale was opened they sought to ascertain from Hitz whom he represented, or who was backing him, and Julian, who was representing each of the Frankfort companies, testified that Hitz told him "He had a partner in Louisville who would pay for it, and that the money would be gotten by drawing on the Main Street Tobacco Warehouse Company at Louisville." Moore, an official of one of the Frankfort companies, testifies that Hitz told him about the same time that the "Main Street Company and Mr. Dannenhold were his partners." Hitz himself admits that he told them, or one of them, that the Main Street Tobacco Warehouse Company was going to pay for all the tobacco he bought.

At the time Hitz is alleged to have made these statements to Julian, the latter directed Abraham, the secretary of each of the plaintiff companies, to call up the Main Street Company at Louisville and verify Hitz's statements. Accordingly Abraham, on the 9th of December, called up the Main Street Company and talked to Cain, the bookkeeper of that company. He told Cain that Hitz had given a draft on the Main Street Warehouse Company and asked if they would pay it, and he was in-

formed they would.   He then asked Cain if they would pay for tobacco that Hitz bought in the future, and Cain said they would do so.   He further testified the first draft given by Hitz was paid, and a subsequent one given by him on the 29th day of December, 1919, for tobacco bought before the 9th of December was also paid.   ·

J. F. Dannenhold testified in substance that he was the president of Main Street Tobacco Warehouse Company and that the company only sold tobacco on commission, but that he, personally, bought tobacco for himself and for others.   That he arranged with Hitz to buy for him personally a carload of tobacco on the Frankfort market, and as a matter of convenience directed him to draw drafts on the Main Street Tobacco Warehouse Company for such purchase and directed that such drafts be paid by the Main Street Company, which was done, and he thereafter gave the company his personal checks for the sums. He further testified that Cain, the bookkeeper of the Main Street Tobacco Warehouse Company, had no authority to pass on contracts for the company; that he only had charge of the books and attended only to making entries on the books, making deposits in bank, and other similar clerical duties, and this evidence of Dannenhold is corroborated by that of Twyman, another officer of appellant company.

The first question of evidence is whether a bookkeeper of a corporation may bind it by promising or agreeing that the corporation will pay for such property as a named individual may purchase.

A bookkeeper is a mere clerical employe of a corporation.   Unless given general authority by the corporation, or unless there be special authority given him with reference to a particular transaction, he may not bind the corporation by his promise or agreement made in its name, or for it.

As said, his duties are purely clerical; they are confined to making entries in the books of the corporation kept as a history of its transactions, but only such entries as he may be directed to make.

One dealing with a corporation necessarily deals with it through some individual either in fact having authority to represent it, or claiming such authority, and it is always incumbent upon the one so dealing with a corporation to look to the authority of the person with whom he is dealing if he seeks to bind the corporation.

Under modern commercial conditions when so much of the business of the world is being done through corporations, it would be preposterous to hold that a corporation may be bound by the mere promise or agreement of a clerical employe having no general or express authority, and thereby place it and its stockholders at the mercy of designing persons, who might or might not be its subordinate employes. To hold that a mere bookkeeper of a corporation or any other clerical employe, without general or special authority so to do, might bind it by his agreement or promise, would be not only to place the stockholders of such a corporation at the mercy of unscrupulous employes and designing outsiders, but would ultimately drive many commercial corporations out of business.

As said by this court in the case of Citizens Development Co. v. Kypawva Oil Co., 191 Ky. 183, in speaking of the secretary of a corporation:

"Moreover the secretary of a corporation is merely a ministerial officer who keeps the books and minutes of the stockholders' and directors' meetings and has charge of the seal of the company. He has no power to act for the corporation in the purchase of property, without special authority so to do. The presumption in the absence of a contrary showing is that the secretary performs only the usual and customary duties of such official to a corporation and no more. 14a C. J. 94."

In this case the bookkeeper was not even the secretary of the corporation which appellees claim was bound by his promise. See also Caddy Oil Company v. Sommer, 186 Ky. 846; note 2, L. R. A. 279; Chicago v. Stein, 25 Ann. Cases. 294, and note; 7 Cyc. 190, 14a C. J. 424.

It results from what we have said that the statement of Cain, the bookkeeper, as testified to by Abraham, was incompetent and wholly insufficient to bind appellant.

That one cannot be shown to be the agent of an individual or a corporation by the mere statements of the one claiming to be the agent is fully settled. Dickman v. Weirich, 73 S. W. 1119; Conley v. Mayo, 157 Ky. 448; Studebaker Corporation v. Miller, 169 Ky. 92. It results from what we have said that the evidence of Julian and Moore to the effect that Hitz claimed to be the agent or partner of appellant was incompetent.

But it is argued by counsel for appellees that the facts and circumstances in evidence authorize the sub-

mission of the question to the jury whether appellant had promised and agreed to pay for such tobacco as Hitz might buy. There is, however, but one pertinent circumstance from which such an inference might be drawn, and that is appellant did actually pay two drafts drawn by Hitz on it for tobacco purchased by him.

That circumstance, however, is fully explained in the evidence of Dannenhold. He testified that he did authorize Hitz to buy for him personally a carload of tobacco, and did direct Hitz as a matter of convenience to draw his drafts on the Main Street Tobacco Warehouse Company; but he states, and files a copy of a letter in substantiation of it, that on the 9th day of December he directed Hitz to cease buying tobacco for the present, although there is no claim that he gave to appellees or either of them notice of his withdrawal of authority from Hitz. This fact, however, can have no bearing upon the right of plaintiffs to a judgment against appellant, although it might have a very distinct and important bearing upon their right to a judgment against Dannenhold; for the evidence, after the incompetent evidence is eliminated, fails to show that Hitz ever had any authority to buy or purchase tobacco for it. Consequently the failure of Dannenhold to give notice of his withdrawal of authority from Hitz could not affect the rights of this appellant, because the competent evidence fails to show that Hitz ever had any authority to purchase for it.

We give no special significance to the fact that Dannenhold, who was the president of appellant company, directed Hitz to draw his drafts in payment for tobacco bought for Dannenhold on that company. This fact must be treated as if Dannenhold had directed Hitz to draw the drafts upon some other person or corporation; and the fact that such other person or corporation had honored two of Hitz's drafts at the suggestion of Dannenhold, would not authorize the inference that such other person or corporation was bound thereafter to honor any draft that Hitz might draw upon it, with or without the direction or authorization of Dannenhold.

Surely a bank which at the direction of one of its customers honors two drafts drawn on it by another, and at the direction of its customer charges the same to his account, is not thereafter bound to honor any draft so drawn on it by such other person.

The facts and circumstances in evidence when properly understood furnish no good basis to draw any such

inferences against appellant as would have justified a verdict against it. When there is eliminated the incompetent evidence, there was nothing to submit to the jury, and the court should have sustained appellant's motion for a directed verdict in each case.

The judgment is reversed with directions to grant appellant a new trial in each case and for further proceedings consistent herewith.