## Caddy Oil Company v. Sommer, et al.

(Decided February 10, 1920.)

Appeal from Lee Circuit Court.

1. Corporations—Making of Contracts by President of.—A president of a corporation is not inherently authorized to make contracts on behalf of the corporation.

2. Corporations—Governing Authority.—The governing power of a corporation is vested in its board of directors, who must act as a body, to bind the corporation.

3. Corporations—Authority of Officer to Act—How Governed.—The authority of an officer of a corporation to act for it, is governed by the general laws, relating to principal and agent, and hence before a corporation is bound by an act of one of its officers, it must be shown, that he was vested with express authority, by the articles of incorporation, by-laws or resolutions, or some act of the board of directors, or else he, is clothed with apparent authority, from the manner, in which the board of directors has permitted him to transact its business of a similar character.

4. Corporations—Contracts on Behalf of—Ratification.—When an unauthorized contract has been made in behalf of a corporation, and its board of directors, with individual knowledge of it, carries out the contract, without repudiating it, and it is beneficial to the corporation, it will be deemed a ratification of the contract, and that the corporation has accepted the burdens of the contract, along with the benefits of it, and therefore a ratification of it.

5. Corporations—Ratification of Contract—Acquiescence.—The board of directors of a corporation do not ratify an unauthorized contract made in its behalf, by acquiescence, unless they have full knowledge of the contract, and with such knowledge, accept its benefits.

SAM HURST, GEORGE GOURLEY and W. P. ROGERS for appellant.

MARTIN T. KELLEY and E. E. HOGG for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This appeal is from a judgment, in favor of the appellees, Alex. Sommer and S. P. Shernberg, against the appellant, Caddy Oil Company, in the sum of $5,000.00, which the appellees claimed, that the appellant was due them for compensation, for procuring, for it, a purchaser of its property, known as the "Jack Wells" lease, which was, at that time, an oil producing prop-

erty. The appellees claim, that appellant, desiring to sell the property, entered into a contract with them, through its president, E. M. Nowell, who, they allege, had authority from the company to make such a contract with them to secure, for it, a purchaser of the property, and in the event, a sale was consummated through the services of appellees, that it would pay to them five per centum of the price for which the property should be sold, and that in accordance with the terms of the contract, they did secure for appellant, a purchaser of the property, and that a sale was consummated through their services for the property for the sum of $100,-000.00. The appellant, by answer, denied, that such a contract was ever made by it, with appellees, through its president, or otherwise, and denied, that its president had any authority from it to make or enter into a contract to pay appellees a commission, or anything, to secure for it a purchaser of its property, or to effect a sale for it. The appellant is a corporation, organized under the laws of Kentucky, for the purpose of owning leases upon lands, upon which to conduct operations for the production of oil, and presumably to dispose of the products. E. M. Nowell, was the president of the corporation, and one of its directors, and Dodge and Woodberry were the other Directors. Nowell lived in Cincinnati, Ohio, and Woodberry, at Dayton, Ky., and it does not appear where Dodge resided. The lands upon which the company held a lease and was conducting operations, are in Lee county, Ky., and this is the lease on account of the sale of which the appellees claim, that they are entitled to a commission equal to five per cent of the sale price.

The appellant's motion for a new trial being overruled, it urges upon this appeal a reversal of the judgment, claiming, that the court erred to its prejudice, in (1.) overruling its motion for a directed verdict in its favor, at the close of the evidence for appellees and at the close of all the evidence; (2) the court misinstructed the jury, and refused to give proper instructions offered by it; and (3) erred in admitting and excluding testimony. To determine whether the first contention is sound, it will be necessary to advert to the evidence, offered by appellees, to support their cause of action. Appellees prove, by their own testimony, that they, or

at least, Sommers knew, that Nowell was president of the appellant corporation, but, there is no attempt to prove, that the directors of the corporation had ever, by by-law or resolution, or by parol, given Nowell any authority to enter into any contract on its behalf, either as its president or as director, nor was any attempt made to prove by its articles of incorporation, or any by-law or resolution of the directors, that the president of the corporation, or a director, acting alone, was invested with authority to bind the corporation, by a contract made in its behalf by him. The theory upon which the action was tried, seemed to be, that, as president of the corporation, Nowell had inherent authority to bind it by a contract, such as was involved, in the instant case. The testimony for the appellees consisted of their own statements and the deposition of one Thraves, who was an agent of the purchaser of the lease from the appellant. The appellees gave evidence to the effect, that Nowell, being in the office of the Phoenix Hotel, in Lexington, Ky., Sommer approached him and requested to know, if he had any producing oil property for sale, and Nowell answered, that he did not know, until he could consult with his associates, when Sommer replied, that he had a purchaser. Nowell expressed a desire to be introduced to him, and Sommer introduced Shernberg to Nowell. Nowell, yet said, that he did not know whether he had anything for sale, until he could see his associates. Shernberg, then said, "Well, I have got the buyer, the man that has got the money, and will pay for it. We don't want no ten per cent either, five per cent commission, that is all we will want if a sale is made." Nowell, then agreed, if a sale was made, that he would pay the appellees, a commission of five per cent. After these terms were again stated between and agreed upon by the parties, Shernberg says, "Well do you want to meet the buyer?" Nowell, says, "Yes, I would be glad to meet him." Shernberg then sought out Thraves and presented him to Nowell. Thereafter, a sale of the "Jack Wells" lease was consummated, to the parties, for whom Thraves was acting as an agent, in purchasing oil properties, for the sum of $100,000.00 as heretofore stated. Thraves corroborated the appellees to the extent of stating, that Shernberg introduced him to Nowell, and that about sixty days thereafter, he effected a purchase

for one Brown, of the "Jack Wells" lease, from the appellant, which was represented in the negotiations by Nowell, Dodge and Woodberry. Nowell, in his testimony, denied, that Sommer had ever had any conversation with him, such as detailed by Sommer, at all, and denied, that he had made any agreement with either Sommer or Shernberg to pay them any commissions, at all, or that they, in anywise, assisted them, in making the sale to Brown, through Thraves. The contention of appellant, that the evidence given by the appellees and Thraves concerning the negotiations between Nowell and appellees in the Phoenix Hotel, was incompetent, because, it had not been shown, that Nowell had any authority to bind the appellant by a contract such as the evidence conduced to prove, that he made with them, is not well taken, because, if it could have been proven, that he was vested with such authority, in order to have proven the contract, it would have been necessary to prove the conversation, as the contract relied upon was a parol one, and it was immaterial, which was proven first, the contract or the authority on Nowell's part to make it, although proof of both was necessary to support the cause of action. This view, however, must be considered in connection, with the general rule, that admissions and declarations of the officers and agents of a corporation, are admissible, as evidence against it, only, while such officers or agents are acting for the corporation and within the scope or apparent scope of their authority. 7 R. C. L. 659, 660. The relation of an officer of a corporation to it, is, that of an agent for it, and the law of agency which requires one, who deals with an agent, to know the extent of his authority, is applied to one, who deals with an officer of a corporation, who assumes to be acting on behalf of the corporation. Hence, a corporation is bound by the acts of its agents, including its officers, where their acts are within the apparent authority conferred upon them by the corporation. In the absence of express authority, shown by the articles of incorporation, by-laws or resolutions of the board of directors, for an officer of a corporation to bind it, by his act, an apparent authority may be shown for the officer, touching the matter, by the manner, in which the directors have permitted the officer, in the usual course of its business, to transact business of a similar char-

acter. This scope of apparent authority, may be shown by what is termed, in Star Mills v. Bailey, 140 Ky. 196, the corporations "custom of dealing." This apparent authority of an officer or agent of a corporation to act for it in a certain way or to a certain extent, does not rest upon the knowledge, which one, dealing with the officer, has of the things, which the corporation has permitted him to do, but upon the knowledge, which the corporation must have had of the officer's acts, touching the transaction of its business. Section 551, Ky. Stats., provides, in whom the governing power of a corporation is vested, in this state, and that is in its board of directors, of which each corporation shall not have less than three, and a majority of whom shall constitute a quorum with power to transact business. The board of directors can not bind the corporation, except when acting as a body, and agreements, between individual members of the board, are not binding upon the corporation. American Oil Co. v. Gedge, 96 Ky. 573; Morawitz, on Corporations, p. 88; Beach, sec., 224. Hence, in determining, whether an officer or other agent of a corporation has been vested with binding authority by the corporation to act for it, in a matter, there must be express authority found for the action of the officer, in the by-laws, resolutions or acts of the board of directors or else the act must appear within the scope of the apparent authority, which the board of directors has invested him, by the manner in which the officer has been permitted by it, with knowledge and approval of or acquiescence in his acts, in the transaction of its business. This apparent authority is, however, limited and governed by the character of business, in which the corporation is engaged. These principles are sustained, as we think, by the following authorities. Star Mills v. Bailey, 140 Ky. 196; Mt. Sterling, etc. v. Lowe, 1 Met. 550; Frankfort Bridge Co. v. Frankfort, 18 B. M. 41; Lee v. Flemmingsburg, 7 Dana 28; Commercial Bank, etc. v. Newport, etc., 1 B. M. 14; 7 R. C. L. 624, 625, 626; Elk Valley Coal Co. v. Thompson, 150 Ky. 614; Cook on Corporations vol. 2, sec. 719; Thompson on Corporations, vol. 2, sec. 1578; Mason, etc. v. Metcalfe Mfg. Co., 19 K. L. R. 1864; Bastins v. Givens, 170 Ky. 201. There is an entire failure of any evidence, as to the customary manner of dealing by the appellant, from which it could be implied, that the

president was either authorized to sell the property of the corporation, or to contract to pay any one to effect a sale for it. The most, that the evidence tends to prove, in the way of clothing him, with an apparent authority to bind the corporation by the contract sued on, is, that the president had supervision of the drilling operations upon the "Jack Wells" lease, but, any apparent authority, that might arise from such employment by him, could not be extended to authority to sell the lease, and without such authority, he was without power to contract for the corporation to compensate one for making a sale. Elk Valley Coal Co. v. Thompson, *supra;* Thompson on Corporations, vol. 2, sec. 1576. It is, however, insisted, that although Nowell was without authority to bind the corporation by the contract, sued on, at the time, he made it, it became binding upon the corporation by a ratification of it, when the sale of the property was consummated by it, and this had the effect of causing the right of appellees to relate back to the time of making the contract. That the contract was one, which the corporation could have given its president authority to make, there is no doubt, and hence, it was one, which its board of directors had the power to ratify and make binding upon it. That there was no formal ratification of the unauthorized contract, the evidence makes very clear, and hence, if there was a ratification, it must be one, which is implied by law from the acts of the corporation, that is, from the acquiescence of the directors, by accepting the benefits of the contract without a repudiation or disaffirmance of it. This implication arises from the doctrine, that, if an unauthorized contract is beneficial to a corporation, and the directors have knowledge of it, and without a repudiation of it, they accept its benefits for the corporation, it will be considered to have accepted the benefits of it, with the knowledge of the conditions under which it was made, and hence, the acceptance must carry with it, whatever burdens it has. That there was no intention on the part of the corporation to ratify the contract, there can be no doubt, since it does not appear from the evidence, that the directors, Dodge or Woodberry had any knowledge of the contract, when they, together with Nowell, made the sale. The only testimony upon the subject, is that, given by Nowell and Woodberry. Nowell denies, that there was any such

contract. Woodberry deposes, that Nowell never communicated to him, the fact of the existence of the contract, which it is alleged, that he made. Woodberry's statement, is as follows: "Q. 6. You may state whether or not any such contract or the payment of the commission, was ever ratified by the company? A. No, I heard something about some men claiming a commission. A. Before the sale, before I knew nothing about it, I did not know the men. Q. 7. No such was done by the directors in any way ratified the contract? A. No, sir."

It is urged by appellees, that these statements of Woodberry show, that he had individual knowledge of the alleged contract before the sale, but, we do not so understand it. Evidently a question is omitted from the transcript, in answer to which Woodberry answers, that he did not know of it before the sale. If it should be considered, that the above statements prove, that he had heard of it before the sale, it fails to show that he had such knowledge of the facts, as the sale would make a ratification of the contract between Nowell and appellees. A ratification by acquiescence can not arise, where the party supposed to acquiesce has not a full knowledge of the facts, or occupies such a relation, that knowledge of it must be imputed to him. The only knowledge, here, shown, is, that he had heard, that parties, whom he did not know, were claiming a commission, and with no more knowledge than this, the consummation of the sale would not amount to a ratification of the alleged contract, whether heard before or after the sale. Kenyon Realty Co. v. National Deposit Bank, 140 Ky. 133; Huffaker v. Kriger, 107 Ky. 200; Pittsburg Cin. & St. L. Ry. Co. v. Wooley, 12 Bush 451; Elk Valley Coal Co. v. Thompson, *supra*, 10 Cyc. 1076. It should be further observed, that appellees do not rely, in their pleadings, upon any ratification of their alleged contract for their cause of action, although the want of authority upon the part of Nowell, to make it, is pleaded.

Hence, conceding the truth of every fact, which the evidence of appellees tends to prove, and every reasonable inference therefrom, the facts proven, do not make out a cause of action against appellant, and the motion for a directed verdict in appellant's favor, should have been sustained. The instructions were not in accordance with the view of the law of the case, as herein expressed,

but, in view of the conclusions arrived at, it will not be necessary to discuss them.

The judgment is therefore reversed and cause remanded for proceedings not inconsistent with this opinion.