### First National Bank v. Bryan, et al.

(Decided June 25, 1926.)

Appeal from Owen Circuit Court.

1. Banks and Banking—Bank will be Bound by Action of Officer, Held Out as Authorized to Rent its Property, Though Particular Action was Not Specifically Authorized by Board of Directors.— Where officer is held out as authorized to represent bank in renting its property, bank will be bound, even though board of directors takes no specific action or does not authorize action in particular matters.

2. Banks and Banking.—Bank, allowing officer in regular course of business to lease its property without objection from board of directors, and thereafter receiving and appropriating rents and recognizing occupants as tenants, is bound.

3. Banks and Banking.—Bank may be bound by acts of officer in regular course of business without specific authority of board of directors, if board subsequently ratifies act, or acquiesces therein by receiving benefits.

4. Banks and Banking—Where Bank President was Authorized to Execute Original Lease, Bank, Accepting Benefits of Renewal Leases, and Recognized Occupants as Tenants, Held Bound.— Where bank president was authorized by board of directors to

sign lease containing renewal option clause, and thereafter, in good faith, on each succeeding year, signed similar lease, though without specific authority to do so, bank, accepting benefits, and recognizing occupants as tenants, held bound by lease so signed.

H. W. ALEXANDER for appellant.

J. W. CAMMACK for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This forcible detainer proceeding, instituted in the Owen county court by appellant bank against appellee, Katy Bryan, and her sisters, resulted in a verdict of not guilty both in Owen county court and Owen circuit court to which it was carried, and this appeal is by the bank. Only a question of law is presented, but we will briefly recite the facts.

For some time before April, 1918, Bryan sisters had occupied a flat in the bank building in Owenton; the bank decided to raise the rent, and in April, 1918, the Bryan sisters went before the board of directors of the bank and it was agreed between them and the board they should have the flat at $25.00 per month, with certain privileges, and the board of directors instructed some one to prepare a written contract and ordered O. H. Curtis, president of the bank and of the board of directors, to sign the name of the bank to the contract by himself as president. Pursuant to that arrangement the following contract was prepared and signed between the parties:

"It is hereby agreed by and between the First National Bank of Owenton, Ky. (hereinafter called the 'bank') and the Bryan sisters (hereinafter called the 'tenant') that the bank leases to the tenant one flat of rooms in the northern half of the second floor of the bank building, in which is now located its place of banking business, for which said tenant agrees to pay $25.00 (twenty-five dollars) per month. This lease to begin June 1st, 1918, and continue one year. Tenant agrees to take good care of said property; tenant is to have the privilege of taking roomers without children and is to be responsible for any damages done to property by said roomers. Bank agrees to keep rooms comfortably heated; to keep said rooms in good repair and to furnish reasonable

amount of hot and cold water when furnace is running and cold water in summer time.   The bank further agrees that said tenant shall have the right to renew this lease from year to year, for a period of three years at said price.   Signed and delivered this 2nd day of April, 1918.

> "FIRST NATIONAL BANK,
> By O. H. Curtis, President.
> BRYAN SISTERS,
> By Essie Bryan."

The Bryan sisters continued in possession of the flat and at the close of the year presented a verbatim copy of the contract, except for the date, to O. H. Curtis, president of the bank, for signature. and he signed it in the name of the bank by himself as president, and it was signed by Bryan sisters.   At the close of each year similar .action was taken, the last one bearing date May 9, 1924.   Each contract contained the provision, "The bank further agrees that said tenant shall have the right to renew this lease from year to year for a period of three years at said price."   Some time in January, 1925, the bank through its board of directors again decided to raise the rent and instructed its custodian to so notify the tenants. When he performed this duty he was informed by the Bryan sisters that they had a contract of date May 9, 1924, for one year with the privilege of renewing for three years.   He reported this fact to the board of directors and this litigation was precipitated.   When Mr. Curtis, the president of the bank, was called as a witness and asked to tell whether or not he signed the contracts under which the Bryan sisters held the flat, he answered, "Yes, sir."

Q.   "And did it in good faith?   A.   Yes, sir;

Q.   "And with intention of binding the bank? A.   Yes, sir; I signed all of these.   I thought it was by consent of the bank and that the bank had a copy of it, and it was the right thing to do.   ·

Q.   "Mr. Curtis, did you sign this in good faith with intention of binding the bank to that contract? A.   Yes, sir; I did."

When presented the contract of May 9, 1924, he was asked:

Q.   "I ask you who signed the bank's name to that?   A.   I did.

Q. "You signed First National Bank by O. H. Curtis, president, in good faith and intending to bind the bank? A. Yes, sir."

After the bank gave Bryan sisters notice that it intended to raise the rents or terminate the lease, the Bryan sisters prepared and signed a written notice to the bank which they caused to be served upon the president of that institution, notifying the bank that they desired to renew the lease of date May 9, 1924, and this notice bears date April 24, 1924.

The evidence further shows without contradiction that Bryan sisters occupied the rooms in the bank building throughout all the year from 1910 until January, 1925, without objection from the bank officials; that the rents were duly paid by Bryan sisters to the cashier and other officials in the banking house, and that the young ladies passed in and out of the building and to and from their apartment from day to day with the knowledge and acquiescence of the board of directors and of the several officials of the bank, including the president, cashier and custodian. When called before the board of directors of the bank concerning the rent contract of April, 1918, Bryan sisters appeared and were informed that a written contract would be prepared and signed by the bank by its president, O. H. Curtis, and when the contract was prepared and signed on that day but later found to be incomplete and another copy prepared Bryan sisters were directed to take the paper to the president of the bank for signature, and he signed the rewritten contract, "First National Bank by O. H. Curtis, president." He signed all the other contracts in the same manner. The board of directors authorized Curtis to sign the contract, and this was with the knowledge and in the presence of Bryan sisters. In that way they learned that the president of the bank was authorized to sign rental contracts, and pursuing the course pointed out by the board of directors Bryan sisters from year to year prepared an exact copy of the contract, except for the date, and presented it to Mr. Curtis, president of the bank, for the bank's signature, and in each instance received it every year from 1918 to 1924. This, it seems, established a course of dealing between the parties which was sufficient to warrant the assumption on the part of Bryan sisters that the president of the bank by order of the board of directors was authorized and empowered

to make and sign written contracts of rental with them covering the flat which they occupied from year to year. Curtis testified that the board of directors had its regular monthly meetings and sometimes had other meetings and that the president was at the meetings, and that it was his duty as president of the bank to advise his directors of the action taken by him for the bank concerning such matters as had been confided to his supervision. If he failed to do so he and not Bryan sisters were at fault. There is no evidence tending to show that Bryan sisters undertook or attempted to take any advantage of Mr. Curtis or the bank in the preparation and execution of the contract of rental. They had the privilege of renewing the contract from year to year and they exercised that right by preparing a new contract each time and presenting it to the president of the bank for his signature. There was no argument or disagreement about the matter in any way and there is no contention that Bryan sisters, or either of them, made any false representation to Mr. Curtis to induce him to sign the contracts or in any way mislead or deceive him or any official of the bank. So far as the record shows both parties were acting in perfectly good faith. A corporation must act through its officers and agents. The board of directors is the central power which authorizes the executive agents of the bank to enter into contracts and embark upon new business ventures. However, where an officer of the corporation is held out by it as authorized to represent the institution in any particular line of its endeavor, as by renting its property, that corporation will be bound even though the board of directors takes no specific action upon the matter and enters no order authorizing the executive officer to act for the corporation in that particular matter. So, likewise is the corporation bound when it allows its officials in the regular course of business to make contracts and to carry on certain divisions of its work, such as leasing its property, without objection from its board of directors and thereafter receives and appropriates the rents and recognizes the occupants as its tenants. Hall-Watson Furniture Company v. Cumberland Telephone and Telegraph Company, 203 Ky. 90; Commonwealth, by, &c. v. Lumber Company, 183 Ky. 11; Union Motor Company of Paducah v. Taylor, 206 Ky. 398. In the Hall-Watson Furniture Company case, *supra,* after stating the general prin-

ciple with respect to authority of the officers of the corporation to act for it, we said:

"It is nevertheless true that in practice a corporation may, and often does, bind itself by the actions of its executive officers and agents without formal grant of power so to do, and this court uniformly has recognized this generally accepted principle of law. Bell & Coggeshall Co. v. Kentucky Glass Works Co., 106 Ky. 7, 50 S. W. 2; Star Mills Company v. Bailey, 140 Ky. 197; Nelson-Bethel Co. v. Pitts, 141 Ky. 242; Elk Valley Coal Company v. Thompson, 150 Ky. 614; Caddy Oil Co. v. Sommer, 186 Ky. 843; Commonwealth v. Mehler, 183 Ky. 11."

Nothing is better settled than that a corporation may be bound by its officers or agents acting in the regular course of business, even though no specific authority be granted by the board of directors, if by subsequent action the board ratifies the acts of the officer or agent, or acquiesces therein by receiving the benefits or advantages arising from the contractual relations.

The chief executive officer of a corporation is naturally presumed by laymen to have authority to act for the corporation, and when the board of directors of the corporation authorize him to make a rental contract with a named individual for a specified time, with privilege of renewal, and directs the tenant to apply to the president for the execution of the contract, the natural presumption would be that the president has authority to renew the contract from year to year, and the tenant would not be obliged to apply to the board of directors each year to find out whether the president was the proper person to execute the contract, but might rely upon the original direction of the board with respect to the matter until further advised, and assume that the president had authority to act for and on behalf of the corporation in the execution of renewal leases, in the absence of anything to the contrary. As the only question raised by appellant is the authority of its president to sign renewal rental contracts, we are persuaded, all the facts considered, that the trial court correctly adjudged the law of the case when it sustained the motion of Bryan sisters for a directed verdict in their favor, dismissing the proceeding.

Judgment affirmed.  ·