## Paducah Newspapers, Inc., v. Goodman.

(Decided Dec. 12, 1933.)

J. D. MOCQUOT for appellant.
WHEELER, WHEELER & SHELBOURNE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The perplexing question involved in these two actions is the validity of a contract entered into by the corporation by its president and general manager without an order or direction, to execute and deliver it, entered of record by the board of directors.

Before May 1, 1929, E. J. Paxton was the owner of the majority of the stock of the Sun Publishing Company, a domestic corporation, engaged at Paducah, Ky., in publishing "The Paducah Evening Sun"; George H. Goodmen was the owner of the majority of the stock of the News Democrat Publishing Company, a corporation, engaged in publishing, in the same city, "The Paducah News Democrat."

The board of directors of the Sun Publishing Company held no meeting from August 14, 1922, until May 1, 1929. E. J. Paxton, as president, and the owner of the majority of the stock, assumed and exercised the authority of the corporation in all of its business with the acquiescence of the stockholders and directors as if he were the sole owner of the corporation, advising occasionally with a member of the board of directors, wherever they happened to meet, about any matter concerning the affairs, business, or property of the corporation. Acting in accordance with this custom, with the knowledge of the stockholders and directors, as president, general manager, and owner of the majority of the stock of the corporation, he and Goodman, the owner of the majority of the stock of the News Democrat Publishing Company, engaged in a deal for the purpose of the Sun Publishing Company, acquiring all of the stock of the News Democrat Publishing Company. The Sun Publishing Company, through E. J. Paxton, offered to purchase of Goodman the stock of the News Democrat Publishing Company, at the price of $200,000, payable according to terms agreed on by them. Goodman declined to accept the offer because he would be required to pay a large amount to the United States government as income tax. To take care of the estimated amount that Goodman would have to pay as income tax on account of the sale of his stock of the News Democrat Publishing Company, the Sun Publishing Company, through E. J. Paxton, offered to pay Goodman an additional sum of $20,000, the approximate amount of his income tax, $2,000 payable each year thereafter, by the month, for a period of 10 years, and for the Sun Publishing Company to execute and deliver to Goodman ten notes, each for $2,000 to be placed in escrow with the Mechanics' Trust & Savings Bank of Paducah, Ky., where the monthly payment was to be made, by the corporation depositing to the credit of Goodman, as credit

on the notes, $166 2/3 per month, the notes to bear interest after maturity, with the agreement that, if Goodman died, the notes were to be paid to his executors, heirs, or assigns, until they were all paid. Goodman accepted.

Two writings were prepared, one evidencing the sale of the stock, showing the agreed price, of $200,000, and the stipulations relating to the sale and delivery of the stock of the News Democrat Publishing Company to the Sun Publishing Company; another showing the agreement respecting the payment of the $20,000 and the execution and delivery in escrow of the ten $2,000 notes. These instruments were prepared and signed by the two corporations, E. J. Paxton signing for the Sun Publishing Company, and Goodman for the News Democrat Publishing Company, and the notes were also executed and placed with the Mechanics' Trust & Savings Bank.

No meeting of the board of directors of the Sun Publishing Company was called or held, and the board of directors, as a body, did not by an order of record formally authorize, direct or approve either of the contracts. A meeting of the board of directors of the Sun Publishing Company, composed of E. J. Paxton, R. Rudy, W. P. Paxton, and J. D. Mocquot, was held May 4, 1929, when the secretary reported "that in accordance with the written consent of the stockholders of the corporation, certain amendments had been made to the articles of incorporation; the name of the corporation had been changed from Sun Publishing Company to "Paducah Newspapers, Incorporated." At this meeting Goodman was elected chairman of the board of directors; other officers of the corporation were elected. A resolution was thereupon offered and adopted, authorizing the issuance of 200 bonds in the sum of $1,000 each in behalf of the corporation to the Citizens' Savings Bank, as trustee, payable within from 1 to 15 years. On the 12th day of July, 1929, a meeting of the board of directors of the "Paducah Newspapers, Incorporated," was held and a new board of directors and another set of officers were elected for the "Paducah Newspapers, Incorporated." At this meeting Goodman resigned as chairman of the board of directors, and his resignation was accepted by the new board.

The writing evidencing the contract between the Sun Publishing Company and Goodman, respecting the execution, delivery, and payment of the ten $2,000 notes, recites that the Sun Publishing Company thereby employed Goodman for a period of 10 years from its date, to serve as chairman of the board of directors, and that his duties as such "shall be only to act in an advisory capacity in the management and operation of newspapers to be published and operated by the Sun Publishing Company." From the execution and delivery of this writing to the resignation of Goodman, as chairman of the board of directors, he performed no service under the contract other than merely advise on one or more occasions with some of the officials of the corporation.

Two of the $2,000 notes, and $833.30 on a third one, were paid to Goodman by the month, as it was agreed in the contract they were to be paid. The last monthly payment was October 3, 1931. Thereafter the "Parucah Newspapers, Incorporated," declined to pay the balance of the third note and declared that the seven remaining notes were invalid on the ground that Goodman had resigned as chairman of the board of directors and ceased to perform the duties of such.

Goodman brought an action at law to recover $1,166.70, with interest from May 1, 1932, as the balance due on the note on which there had been paid the $833.-30. The "Paducah Newspapers, Incorporated," filed an action in equity against Goodman and the Mechanics' Trust & Savings Bank of Paducah to cancel all of the $2,000 notes and the contract evidencing the agreement in pursuance to which they had been executed.

Judgment was rendered in favor of Goodman for the $1,166.70, and denied relief to the "Paducah Newspapers, Incorporated," in its action to cancel the notes and the contract.

Goodman's contract and notes are attacked on the ground they were drawn for the purpose of evading the provisions of the income tax laws of the United States, and that they were executed without authority of the board of directors of the Sun Publishing Company. The first ground is not argued in the briefs; hence we shall regard it waived.

The validity of the contract by which the Sun Publishing Company purchased the stock of the News' Democrat Publishing Company was not attacked in either action.

To sustain the argument that Goodman's notes and contract are invalid and unenforceable, the Paducah Newspapers, Inc., cites section 551, Ky. Stats.; Haldeman v. Haldeman, 176 Ky. 635, 197 S. W. 376; Mt. Sterling & Jefferson Turnpike Road Co. v. Looney, 1 Metc. 550, 71 Am. Dec. 491; Ky. Tobacco Ass'n v. Ashby, 9 Ky. Law Rep. 109; Fletcher on Corporations, secs. 2108 and 2033.

The general principles deducible from these authorities are not disputed. The board of directors cannot bind the corporation except when acting as a body (section 551, Ky. Statutes; Caddy Oil Company v. Somner, 186 Ky. 843, 218 S. W. 288); and its acts are not binding unless done according to law and shown by its records. Nor can less than a quorum at a meeting of the board bind the corporation (Paducah & Illinois Ferry Co. v. Robertson, 161 Ky. 485, 171 S. W. 171), and the separate assent of the majority is not binding on it (Haldeman v. Haldeman, 176 Ky. 635, 197 S. W. 376). There are many exceptions to these general rules, instances of which are where an officer of the corporation is held out by it as clothed with authority to represent the institution in any particular line of its endeavors, it will be bound by the act of the officer even though the board of directors has not at a formal meeting taken specific action upon the matter, and entered order authorizing him to act for it in the particular matter; or if the corporation allows its official in the regular course of business to make contracts and to carry on its work without objection from its board of directors and thereafter receives and appropriates the benefit of his work, it is bound by his acts. Hall-Watson Furniture Co. v. Cumberland Telephone & Telegraph Co., 203 Ky. 90, 261 S. W. 883. In practice a corporation may, and often does, bind itself by the actions of its executive officer or agent without formal granting of power to do so (Bell & C. Co. v. K. G. W. Co., 106 Ky. 7, 50 S. W. 2, 1092, 51 S. W. 180, 20 Ky. Law Rep. 1684, 21 Ky. Law Rep. 133, 156; Star Mills v. Bailey, 140 Ky. 197, 130 S. W. 1077, 140 Am. St. Rep. 370) by some act of the board of directors, or by permitting authority;

or from the manner in which the board of directors has permitted him to transact its business of a similar character (Caddy Oil Company v. Somner, supra) or his authority may arise from a custom of the board of directors from long practice, permitting him to act generally for the corporation (Kozy Theatre Co. v. Love, 191 Ky. 595, 231 S. W. 249). Nothing is better settled than that a corporation may be bound by its officer or agent acting in the regular course of business, even though no specific authority be granted by the board of directors, if by subsequent action, the board ratifies his acts, or acquiesces therein and receives the benefits or advantages arising from his actions. First National Bank v. Bryan, 215 Ky. 338, 285 S. W. 239; Enterprise F. & M. Works v. Miners' Elkhorn Coal Company, 241 Ky. 779, 45 S. W. (2d) 470. Appraising the evidence in the pending case in the light of these generally accepted principles, it is not doubtful that E. J. Paxton, from the general custom and manner in which the corporation, the board of directors, and stockholders engaged in business through him, habitually for a period of years, in permitting him to exercise the powers of a sole owner of the corporation and its property, had ample authority to enter into the two written contracts with Goodman and agree for the corporation on their provisions, and to execute and deliver them and the notes to Goodman. The two contracts were executed simultaneously by the same parties covering the same subject-matter and must be considered as one instrument, for the purpose of arriving at the intention of the parties thereto. While the contract respecting the payment of the $20,000, accompanied with the ten notes, recites that the moving consideration was service of Goodman, as chairman of the board of directors, under the established rule, extraneous evidence though it may vary, or contradict, in this respect, the writing, is admissible to show the true consideration. Piney Oil & Gas Co. v. Allen, 235 Ky. 767, 32 S. W. (2d) 325; Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955. The evidence showing that the ten $2,000 notes were a part of the agreed consideration for Goodman's stock of the News Democrat Publishing Company is not contradicted; nor is the evidence that the purchase by E. J. Paxton of the stock of the News Democrat Publishing Company was ratified by the board of directors at its meet-

760

ing whereat it directed to be issued the 200 bonds aggregating $200,000. E. J. Paxton, in his testimony, declared that in the execution and delivery of the two contracts to Goodman and the execution and delivery of the ten $2,000 notes, he consulted with the members of the board of directors, according to custom and apprised them of the negotiations of his corporation with Goodman to acquire the stock of the News Democrat Publishing Company and that the two contracts were made, executed, and delivered by him for the corporation in accordance with the custom of the members of the board of directors and himself. His testimony is neither impeached nor contradicted.

Perceiving no error in either case, the judgment is affirmed.