**CUSTER CHANNEL WING CORPORATION and William R. Custer, for the Benefit of Custer-Frazer Corporation, Plaintiffs,**

v.

**Joseph W. FRAZER, H. Fraser Leith, John Astor Drayton and Custer-Frazer Corporation, Defendants.**

United States District Court
S. D. New York.
Dec. 9, 1959.

Burns, Currie, Maloney & Rice, New York City, for plaintiffs. Francis Cur-

rie, Walter E. Maloney, New York City, of counsel.

Wolf & Burrell, New York City, for defendants Joseph W. Frazer, H. Frazer Leith and John Astor Drayton. George A. Burrell, New York City, of counsel.

Joseph S. Schuchert, for defendant Custer-Frazer Corp.

HERLANDS District Judge.

This proceeding is a stockholder's and dissenting director's action for a permanent injunction to prevent alleged corporate waste and self-dealing by directors, and a motion for a preliminary injunction. The application for an injunction *pendente lite* is now before the court. At present there is outstanding a temporary restraining order which has been extended pending the determination of this motion. There are substantial issues of fact as to the ultimate questions of waste and self-dealing.

Plaintiff Willard R. Custer is the inventor of a unique principle of aircraft wing design which is not presently used on any aircraft except prototypes, although it was developed some years ago. He is the president and a director of plaintiff Custer Channel Wing Corp. (herein "Channel Wing"), a Maryland corporation, with offices in Maryland. Custer and his family own the majority of Channel Wing's voting stock. Channel Wing has about 3,000 stockholders, apparently most or all (except the Custer family) non-voting.

Custer is also chairman of the board of directors of defendant Custer-Frazer Corporation. However, he owns no stock therein.

The individual defendants accuse plaintiff Custer of capricious and obstructionist activities which, they say, have for years prevented the commercial exploitation of the invention, to the prejudice and detriment of all the individuals and corporations involved.

Custer joined Channel Wing as a co-plaintiff herein without direction of its board of directors. Of the other five directors of Channel Wing, Larson, Neal and Peat have filed affidavits in support of the defendants. The remaining two directors are officers. The record is silent as to their alignment in this controversy.

Until the spring of 1958, Channel Wing owned the patents. The patents were then transferred to Custer-Frazer Corporation in exchange for 88 percent of the voting stock of Custer-Frazer Corporation and its assumption of liabilities in the amount of $93,000. Channel Wing does not appear to have any other business. As indicated, it holds 88 percent of the voting stock of defendant Custer-Frazer Corporation. Custer-Frazer Corporation is a nominal defendant.

Custer-Frazer Corporation, the subject of this action, is a Delaware corporation, with offices in New York City. It is a close corporation.

As noted, Custer is chairman of the Board. His daughter is a director and the treasurer. Defendant Joseph W. Frazer is the president and a director. Defendants Drayton and Leith are also directors. Frazer, Drayton and Leith reside in this District. Other directors, including Schuchert and Peat, are defendants in a parallel action in the Western District of Pennsylvania.

Custer-Frazer Corporation was formed early in 1958. Although its charter declares one of its purposes to be the manufacture of aircraft, Peat's affidavit states that its only purpose was to find licensees and to negotiate licenses to exploit the invention. Until the events herein at issue, it had apparently failed to find such licensees.

In this controversy, all the other directors of Custer-Frazer Corporation appear to be aligned against Custer and his daughter.

The individual defendants are not stockholders of Custer-Frazer Corporation.

Plaintiffs' charges of corporate waste and directors' self-dealing arise principally out of the action of the defendant-directors at a purported board meet-

ing of Custer-Frazer Corporation on November 19, 1959, in approving a license agreement between that corporation and Channelair, Inc. Plaintiffs assert that the licenses to be granted would be exclusive and irrevocable, without adequate consideration, and would constitute a transfer of substantially all of the assets of Custer-Frazer. They further charge that one or more of the defendant-directors are beneficially interested in Channelair, Inc. and that the boards of the two corporations are actually, if not technically, interlocking. While defendants controvert every one of these allegations, it is apparent from their papers that the charges are not frivolous.

In their affidavits, defendants state that the license agreement with Channelair, Inc. was executed and delivered on November 20, 1959, prior to the issuance of the temporary restraining order.

Plaintiffs further allege that, apart from the ultimate issues of waste and self-dealing, the meeting of November 19, 1959 was improperly noticed and held without a quorum; that, therefore, the resolutions adopted at that meeting are null and void; and that the invalidity resulting from the improper notice and lack of quorum constitutes by itself sufficient ground for a preliminary injunction restraining the defendants from doing anything to effectuate the resolutions adopted at the November 19, 1959 meeting. Plaintiffs claim that they will be irreparably injured by any steps taken by defendants to carry out said resolutions because rights of third parties may arise, as to which the Custer-Frazer Corporation may become estopped.

Defendants challenge Custer's right to bring this action in the name of Channel Wing.

They also controvert plaintiffs' conclusions as to both notice and quorum. However, analysis indicates that there is no dispute as to most of the material facts with respect to notice and quorum.

The secretary called the meeting for November 18, 1959. Whether he did so by direction of the president, as required by the by-laws, is disputed. After the secretary had sent out said notice, and on November 17, 1959, the president, defendant Frazer, sent out a telegraphic notice that the meeting would be held on November 19, 1959.

The by-laws allow a meeting to be called by the president on two-day telegraphic notice. Plaintiffs argue, however, that the president's telegram merely had the effect of postponing the meeting invalidly called by the secretary. The court is of the opinion, however, that there was a valid notice.

With respect to the question of a quorum, it is necessary to consider the by-laws of Custer-Frazer Corporation. The by-laws provide that the number of directors shall be not less than three nor more than eleven, the exact number to be fixed from time to time by action of a stockholders' annual meeting or by resolution of the board of directors; that the first board shall consist of six directors; that a number of directors less than a quorum may fill vacancies on the board; and that a quorum shall be six.

Immediately preceding the November 19, 1959 meeting there were eight directors. Five of the eight were present at the meeting of November 19, 1959. Of these five directors who were present, one (the defendant Leith) had earlier submitted his resignation in the following form under date of November 4, 1959:

"I would like to submit my resignation as a member of the Board of Directors of the Custer Frazer Corporation, to be effective immediately."

However, no action was taken to accept or reject the resignation.

At the November 19, 1959 meeting, the five directors (including Leith) purported to elect a sixth director, one Young, to fill a supposed vacancy, on the erroneous theory that there were three vacancies on the board because the by-laws authorized a maximum of eleven directors. These six directors, considering themselves to constitute a quorum,

proceeded with various items of corporate business, all of which are under attack in this litigation.

Defendants argue that Leith had not effectively resigned, because the form of his letter was such as to require acceptance, which was not given; and that, until such acceptance, Leith could recall his resignation, which he impliedly did, by actually serving as a director at the November 19, 1959 meeting. It is not necessary to decide Leith's status as a director because, even if it be assumed that he was validly a director, there was one director short for a quorum of six, inasmuch as Young's election was invalid.

As to Young, it is the court's view that a vacancy on the board of directors exists only when there is not a full complement of the number of directors as fixed by a resolution duly adopted by the board of directors or at a stockholders' meeting, within the by-law limits of three to eleven directors. Both sides proceed on the assumption that, at the time of the November 19, 1959 meeting, the duly authorized complement was eight. There was no vacancy in that complement of eight. If Leith be deemed to have resigned, then Young's election *(arguendo)* simply brought the number of directors in attendance up to five, one short of a quorum. If Leith be deemed not to have resigned (which is the position taken by the defendants), there was nevertheless one director short of a quorum, because Young's purported election was an invalid attempt to increase the duly authorized complement of eight to nine. The defendants have confused the distinction between filling a vacancy—which can be accomplished under these by-laws by action of a number of directors even less than a quorum—and increasing the number of the board of directors—which can be accomplished under these by-laws only by a duly constituted meeting of the board of directors or by a stockholders' meeting. Belle Isle Corp. v. MacBean, 1948, 30 Del.Ch. 373, 61 A.2d 699.

■ It follows that the November 19, 1959 meeting was not validly constituted and that the various resolutions adopted at that meeting were voidable. Kerbs v. California Eastern Airways, 33 Del. Ch. 69, 90 A.2d 652, 34 A.L.R.2d 839. There is no present likelihood that the stockholders of Custer-Frazer Corporation will ratify (and thus cure) the invalidity of the said resolutions, because the plaintiffs represent the majority stock interest.

Defendants challenge Custer's right, as president of Channel Wing, to bring this action in its name without specific authorization of its board of directors. They submit affidavits of three of Channel Wing's six directors, in which those three express disapproval of the suit, and state that, at a meeting of Channel Wing's board on November 14, 1959, the license of Custer-Frazer Corporation to Channelair "was, in general, approved," although no resolution to that effect was adopted because it was the business of Custer-Frazer, and not Channel Wing.

Plaintiffs argue that Custer is president of Channel Wing and is, therefore, presumptively entitled to bring an action in its behalf to protect its interest, unless its board of directors has specifically disapproved such action, which it has not.

■ The court is of the opinion that Channel Wing is properly a co-plaintiff in this action.

"The president of a corporation as incident to its regular course of business ordinarily has prima facie authority to authorize suit on its behalf * * * and to engage counsel for that purpose." I Hornstein, Corporation Law and Practice (1959) ch. 23, section 515; West View Hills, Inc. v. Lizau Realty Corp., 1959, 6 N.Y.2d 344, 189 N.Y.S.2d 863, 160 N.E.2d 622. There is no Maryland authority on the point.

The defendants argue that a preliminary injunction should not issue because the license agreement with Channelair, Inc. has already been executed and delivered and such action had been taken on November 20, 1959, prior to the issuance of the temporary restraining order herein.

As a general proposition, a court will not issue an injunction to restrain completed acts. But where, as here, all of the objectionable acts have not yet been consummated and the defendants are still engaged in a course of continuing conduct to carry out the invalidly adopted resolutions, the court has the power (which it now exercises) to enjoin the defendants from committing further harm and injury. In an urgent case, the court may issue a preliminary injunction in a stockholder's derivative action. II Hornstein, Corporation Law and Practice (1959) ch. 29, section 728, n. 45.

The plaintiffs have shown prima facie that they and the Custer-Frazer Corporation will suffer irreparable harm if preliminary relief is not granted. The plaintiffs have made an adequate prima facie showing of the essential facts entitling them to a temporary injunction.

A court should, so far as practicable, refrain from interfering with the internal affairs and management of a corporation. In the circumstances of this case, however (10 Fletcher, Cyclopedia Corporations, section 4860), the plaintiffs have clearly established the need for the drastic and extraordinary relief of a temporary injunction which is to be limited to the urgent necessities of the situation. This is considerably less than the ultimate relief prayed for in the action for a permanent injunction.

Moreover, the parties should take the appropriate steps to assure an early trial on the merits. The objective of the temporary injunction granted herein is to preserve the property and legal rights of the parties so far as possible as of November 19, 1959, until the merits can be determined at a plenary hearing. The decretal provisions of the temporary injunction should be designed to achieve that primary objective.

The harm which may result to the defendants by the granting of the temporary injunction herein is commensurate with the harm to plaintiffs which is averted.

In accordance with the findings of fact and conclusions of law appearing in this opinion [F.R.Civ.P., rules 52(a) and 65 (d), 28 U.S.C.A.], the court grants a temporary injunction for the reasons set forth above.

Pending the determination or discontinuance of this action, the defendant Custer-Frazer Corporation should be enjoined from (1) doing any acts to effectuate the resolutions adopted at the purported meeting of the board of directors of said corporation held November 19, 1959, until such time as proper corporate proceedings, by the board of directors properly convened and constituted or by a meeting of the stockholders properly convened and constituted, shall ratify or re-enact the substance of such resolutions; and (2) dealing or communicating in any way with Channelair, Inc., before or after such ratification or re-enactment, unless it shall give notice to Channelair, Inc., formally and in writing, of the pendency and nature of this suit. This injunction shall also be binding upon the individual defendants herein with regard to any action which they, or any of them, may undertake for or in behalf of Custer-Frazer Corporation.

An order, in accordance with the foregoing, shall be settled on two days' notice. Either side may submit, if so advised, any supplemental or additional proposed findings or conclusions deemed necessary or appropriate, including (for example) specific terms and reasonably detailed description of the acts to be restrained. F.R.Civ.P., rule 65(d).

At the time of settlement of the order the parties may submit such data by way of affidavit as will enable the court to determine the amount of security to be fixed.