**HAR–BEL COAL COMPANY et al.,**
Appellants,

v.

**ASHER COAL MINING COMPANY,**
Red Star, Inc., et al., Appellees.

Court of Appeals of Kentucky.

Dec. 9, 1966.

As Modified on Denial of Rehearing
May 12, 1967.

James S. Greene, Jr., Greene & Forester, Harlan, for appellants.

E. B. Wilson, James S. Wilson, Pineville, for appellee, Asher Coal Mining Co.

William L. Rose, Williamsburg, for appellee, Red Star, Inc.

WILLIAMS, Judge.

This case involves the validity of a coal-mining lease allegedly entered into between Asher Coal Mining Company (hereafter Asher Company) and the Har-Bel Company (hereafter Har-Bel). The Bell Circuit Court found the lease to be invalid and Har-Bel has appealed.

The Asher Company owned coal-bearing lands which it leased to various concerns for the purpose of extracting and marketing coal. Included were two areas generally known as the Insull Boundary and the Balkan Boundary. In 1956 Asher Company leased the Insull Boundary to William F. Conley, president of Har-Bel. In 1957 negotiations between Robert Asher, president of Asher Company, and Conley, concerning a lease of the Balkan Boundary, were initiated. Upon the strength of such negotiations Conley purchased a tipple and other equipment and machinery already on the property from a third person. Robert Asher knew of and encouraged the purchase of such equipment and agreed to lease the Balkan Boundary subject to the same terms and conditions contained in the Insull Boundary lease. The initial term was to be five years with options to renew.

Relying on the oral agreement with Robert Asher, Conley (Har-Bel) entered into a sublease with Red Star, Inc. On about September 17, 1958, Red Star, Inc. moved equipment on to the Balkan Boundary and commenced stripping coal.

A few days thereafter Robert Asher and Conley requested the Asher Company's regular attorney to prepare a lease covering the Balkan Boundary. Various changes in the first draft were agreed to by both parties and a second draft was prepared. After further changes were made a third and final draft was prepared by the attorney. The instrument was signed by Robert Asher as president of Asher Company in the presence of Willard Kiger, an officer of Har-Bel. There is some question as to whether the instrument was then handed to Kiger, but in any event it was left with the attorney or Asher for the purpose of securing the signature of the secretary of the Asher Company.

The secretary refused to sign and the board of directors of the Asher Company did not authorize Robert Asher to enter into the lease. A copy of the instrument filed in this record bears the signature of Robert Asher, as president of Asher Company, but does not bear the signature of the secretary or the corporate seal or the signature of an officer of Har-Bel. The Asher Company later entered into a lease directly with Red Star, Inc.

The Asher Company brought this action against William Conley, Har-Bel and Red Star, Inc., seeking to recover a royalty of 35 cents per ton on all coal mined from the leasehold by Red Star prior to the date of the lease between Asher Company and Red Star. Conley and Har-Bel denied liability and counterclaimed for damages for breach of the lease contract. Red Star cross-complained against Conley and Har-Bel for such sum, if any, as the Asher Company might recover against it. Conley and Har-Bel then filed a third-party complaint against Robert Asher seeking recovery of damages against him in the event the court should find he was without authority to enter into the lease. Before the case was submitted, Robert Asher was declared to be incompetent and June Asher Culton was appointed as his committee and made a third-party defendant. Robert Asher later died and June Asher Culton was

appointed executrix under his will. As executrix she was substituted as third-party defendant by order of the court. The judgment of the Bell Circuit Court was in favor of the Asher Company, the Robert Asher estate, and Red Star, Inc.

In its conclusion of law the Bell Circuit Court pointed out that a corporation may act only through its board of directors, and is bound by the acts of its officers or agents only when made within the scope of their authority. Facts to bring this case within the exception to the rule that, where an officer of a corporation is held out by it as authorized to represent the corporation, then the corporation is bound by his acts, were found to be totally lacking. The court found that "Robert Asher had no authority, real or apparent, to make the alleged verbal or proposed written lease to Conley or Har-Bel."

It has long been settled in this state that an officer of a corporation has no general authority to execute contracts on behalf of the corporation. Authority to bind the corporation must come either from the by-laws or the board of directors, or the action of the officer must be of the nature that comes within the apparent scope of his employment. And, if the acts of the officer are relied on, his authority must be shown. In re Independent Distillers of Kentucky (DCWD Ky), 34 F.Supp. 724 (1940); Kentucky-Pennsylvania Oil & Gas Corp. v. Clark, 247 Ky, 438, 57 S.W.2d 65 (1933); Caddy Oil Co. v. Sommer, 186 Ky. 843, 218 S.W. 288 (1920); Mount Sterling & Jeffersonville Turnpike Road Co. v. Looney, 58 Ky. (1 Metc.) 550, 71 Am.Dec. 491 (1859). The mere representations of a claimed agent, even when coupled with signing a paper in such capacity, are not sufficient to show his agency or the extent thereof. Short v. Metz Co., 165 Ky. 319, 176 S.W. 1144 (1915).

Here the evidence fails to show that Robert Asher had actual authority to bind the Asher Company. No such authority was shown to exist either in the by-laws or by action of the board of directors. The same situation prevails as to his apparent authority. All leases previously executed by Asher Company, including one to Conley, had been signed by the president and attested by the secretary. In fact, Conley personally called on the secretary in an effort to get him to sign the instrument under discussion, which indicates he believed the attestation was necessary before delivery. It is undisputed that the Asher Company did not ratify the action taken by Robert Asher. All this leads to the conclusion that the circuit court had reasonable grounds to find that Robert Asher had no authority, real or apparent, to bind the Asher Company.

It follows, of course, that the instrument signed without authority by the president did not bind the Asher Company. Moreover, regardless of whether the instrument was handed to Kiger of Har-Bel, the fact remains it was retained either by Robert Asher or the Asher Company attorney for the purpose of securing the secretary's signature. The signature was not obtained and the Asher Company refused to ratify the lease in any manner. Even though we assume Kiger had the instrument in his hand, that did not amount to a delivery of a valid lease under the circumstances. See Chaney v. Noland, Ky., 387 S.W.2d 308 (1965).

In Appleby v. Buck, Ky., 351 S.W.2d 494 (1961), we pointed out that an oil and gas lease is an interest in real estate within the meaning of the statute of frauds. A coal lease creates no less an interest. Any oral agreement had between Robert Asher and Conley was for an initial period of five years, and no action may be maintained against Robert Asher by virtue thereof. KRS 371.010.

If the claim of Har-Bel against Robert Asher was based upon breach of implied warranty of authority to execute the lease on behalf of Asher Company, rather than

upon the lease itself, it was not established. It is evident Har-Bel considered a properly executed written lease necessary. Though Robert Asher signed it, this was not adequate execution and Har-Bel knew it. In addition, the instrument was not delivered. The transaction was not completed and Asher had not warranted his authority to complete it.

We conclude the judgment of the Bell Circuit Court was correct, and it is affirmed.