COVINGTON HOUSING DEVELOP-
MENT CORPORATION et al.,
Plaintiffs,

v.

CITY OF COVINGTON et al.,
Defendants.

Civ. No. 1752.

United States District Court,
E. D. Kentucky,
Covington Division.

Sept. 11, 1974.

**428**

Clifford R. Fennell, Cincinnati, Ohio, Frank Gofton Ware, Florence, Ky., for plaintiffs.

Charles P. Wagner, Covington, Ky., for Covington, Grimm, Sageser, Bowman, Wermeling, Simpson, Royster, Hedrick and Wolfe.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., for Carlton and Wooten.

Joseph T. Condit, Covington, Ky., for Woods.

Charles H. Schaffner, Newport, Ky., for Condit.

## MEMORANDUM

SWINFORD, District Judge.

The complaint in this civil rights action commenced by the Covington Housing Development Corporation and its executive director alleges that on October 5, 1972, the corporation contracted with the City of Covington for the development of residential areas under the Demonstration Cities and Metropolitan Development Act, 42 U.S.C. § 3301 et seq. Because the executive director of the Authority was a Negro, city officials deliberately misrepresented certain facts to the Department of Housing and Urban Development in a successful attempt to halt further funding to the project. The corporation alternately seeks damages or reinstatement of the development, while Thompson demands remuneration for the defendants' racist hiring practices and defamatory allegations of fiscal irresponsibility.

Orders entered on December 18, 1973, and June 27, 1974, directed the dismissal of the complaint as to the City of Covington and certain federal officials. The record is now before the court on the defendants' motion for summary judgment on the ground that Thompson lacks the capacity to sue in the name of the Covington Housing Development Corporation. It is contrarily asserted that the plaintiff's power to initiate this action is derived from his managerial position as reflected in governing statutes and corporate records; that several directors informally agreed to the commencement of this action; and that the corporation has ratified Thompson's action. An examination of the cited standards compels dismissal of the complaint.

The plaintiff's assertion of an inherent authority to institute this action in the name of the entity reveals a fallacious interpretation of both the corporate records and the legal principles outlining the extent of a manager's authority. Kentucky law vests control over corporate affairs in a board of directors, "except as may be otherwise provided in the articles of incorporation." K.R.S. 271A.175.[1] The board

---

1. Although incorporated under K.R.S. Chapter 273, the provisions of Chapter 271A are applicable to "any corporation formed under the laws of this state unless the statutes re-

may in turn delegate a portion of its decision making authority to responsible corporate officers:

"All officers and agents of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided in the bylaws, or as may be determined by resolution of the board of directors not inconsistent with the bylaws." K.R.S. 271A.250(2).

See Har-Bel Coal Company v. Asher Coal Mining Company, Ky., 414 S.W.2d 128 (1966). The Articles of the Covington Housing Development Corporation direct the board of directors to "appoint such officers and agents as the affairs of the corporation may require and to define their duties . . . ." Article III. The responsibilities of the executive director are thus enunciated in the corporation's bylaws:

"The Executive Director shall be the Chief Executive Officer of the corporation. He shall have custody of the Corporation funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation. He shall deposit all monies and other valuable effects in the name, and to the credit of the corporation in such depositories as may from time to time be designated by the Board of Directors. He shall have all of the general powers and duties which are usually vested in the office of the Chief Executive Officer of the Corporation." Article V, Section 4.

While the executive director is not expressly denied the authority to institute legal proceedings, the court is cited to no article, bylaw or resolution vesting such responsibility in the plaintiff.

"Authority to bind the corporation must come either from the by-laws or the board of directors, or the action of the officer must be of the nature that comes within the apparent scope of his employment. . . . The mere representations of a claimed agent, even when coupled with signing a paper in such capacity, are not sufficient to show his agency or the extent thereof." Har-Bel Coal Company v. Asher Coal Mining Company, supra at 130.

Muir v. Glassbrenner Motors Company, 211 Ky. 1, 4, 276 S.W. 1058 (1925); Caddy Oil Co. v. Sommer, 186 Ky. 843, 847, 218 S.W. 288 (1920). The depositions and interrogatories of other participants in the operation reveal that the executive director was at no time vested with the authority to commence litigation; indeed, the corporate minutes strongly suggest that Thompson was not even a company official at the time this action was initiated. While a managing director enjoys a broad range of commercial responsibility, the court is unaware of any decision construing in such inherent control the right to commence litigation of this magnitude. Rather, it is well settled that a manager's authority is limited to the conduct of ordinary business affairs:

"(T)he general business of corporations is frequently entrusted to the management of a general manager . . ., who has the power to bind the corporation by acts within the scope of his apparent authority. Such authority is not limited by the fact that the general manager is also the president or other officer of the corporation, for it is not incident to such other office, but is incident to the management of the business. . . . He has been deemed by numerous authorities to be the principal officer of the corporation, having general charge of those business matters for the carrying on of which the company was incorporated, and he has

lating to a corporation of that kind either are inconsistent with this chapter or state

that the provisions of this chapter do not apply to it." K.R.S. 271A.015(1).

the implied or ostensible power to do any act which is usual or necessary in the ordinary transaction of the company's business." 19 Am.Jur.2d "Corporations" Section 1174, p. 599.

See also Gaddie v. Collins of Kentucky, Ky., 248 S.W.2d 722, 723 (1952); Model Bus. Corp. Act Ann.2d, Section 50, Paragraph 2, p. 90; Note, 40 Ky.L.J. 184 (1952). The powers implied in such a governing director typically include: consummating contracts incidental to corporate operations; procurement of equipment; employing and supervising employees in the course of business; selling goods; receiving payment of accounts; and directing the ordinary affairs of the business. Restatement, Second, Agency, Section 73. The frequently added authority to commence necessary litigation, see Custer Channel Wing Corporation v. Frazer, S.D.N.Y., 181 F.Supp. 197 (1959); Annot., 10 A.L.R.2d 701; contra Fanchon & Marco, Inc. v. Paramount Pictures, S.D.N.Y., 107 F.Supp. 532, 538 (1952), reversed on other grounds 2d Cir., 202 F.2d 731 (1953), is subject to the same limitations attending the manager's other functions: "the authority . . . is normally restricted to litigation incidental to the regular course of the corporation's business." Note, 50 Ky. L.J. 92 (1961); see Ky. Penn. Oil & Gas Corp. v. Clark, 247 Ky. 438, 450–451, 57 S.W.2d 65 (1933); Rasnick v. W. M. Ritter Lumber Co., 187 Ky. 523, 219 S.W. 801 (1920). Even this circumscribed power is negated in the event of internal corporate dissension regarding the propriety of suit. See Contee Construction Co. v. Cay Construction Co., Fla., 221 So.2d 792 (1969); Note, 50 Ky.L.J. 92 (1961). Thompson's litigation relates not to ordinary business affairs but is an extraordinary attempt to revive an enterprise which the board of directors ordered terminated on March 16, 1973.

■ The conclusion that the plaintiff acquired no inherent power to initiate this action is buttressed by Kentucky decisions narrowly defining the functions exercisable by a single officer. Thus, the court in Caddy Oil Co. v. Sommer, 186 Ky. at 847, 218 S.W. 288, ruled that a president's general administrative authority did not embrace the right to contract for the sale of corporate property; "(t)his . . . authority is . . . limited and governed by the character of business in which the corporation is engaged." Banco Ky. Co's Rec'r v. Nat'l Bk. of Ky.'s Rec'r, 281 Ky. 784, 137 S. W.2d 357 (1939); Empire Coal Mining Co. v. Empire Coal Co., 183 Ky. 699, 210 S.W. 474 (1919); see also Burley Tobacco Co. v. Vest, 165 Ky. 762, 178 S.W. 1102 (1915). Similarly, the expansive power "to transact all kinds of business", does not authorize a general manager to sell corporate property or bind the company to a contract unconnected with the business of the enterprise. Elk Valley Coal Company v. Thompson, 150 Ky. 614, 150 S.W. 817 (1912).

■ The plaintiff's reliance upon an informally granted authority to commence this litigation ignores the "well settled doctrine that a corporation can act only through its directors at an official meeting regularly held, and that its acts can be proven only by the records of such meeting." Bastin v. Givens, Admx., 170 Ky. 201, 205, 185 S.W. 835 (1916); Clay v. Mt. Holly Development Company, Ky., 464 S.W.2d 621, 624 (1971); Star Mills v. Bailey, 140 Ky. 194, 130 S.W. 1077 (1910). See also Paducah Newspapers, Inc. v. Goodman, 251 Ky. 754, 65 S.W.2d 990 (1933); Kozy Theatre Company v. Love, 191 Ky. 595, 601–602, 231 S.W. 249 (1921); a business will not be bound by agreements secured among isolated directors. Caddy Oil Company v. Sommer, 186 Ky. at 847, 218 S.W. 288; see 19 Am.Jur.2d "Corporations", Section 1157. The claimed ratification of Thompson's decision to sue is similarly unsupported by any suggestion of express or implicit approval of the plaintiff's action; see Tar-

rants v. Henderson County Farm Bureau, Ky., 380 S.W.2d 274, 277 (1964); Catlettsburg & Buchannan Telephone Co. v. Bond, 262 Ky. 106, 108, 89 S.W.2d 859 (1936); Harlan, Etc., Co. v. Eastern Construction Co., 254 Ky. 135, 145, 71 S.W.2d 24 (1934); Paducah Newspapers, Inc. v. Goodman, 251 Ky. at 758–759, 65 S.W.2d 990.

A finding that the corporate plaintiff is not properly a party to this action compels a secondary determination whether the action should be dismissed or retained for resolution of the claims proffered by the individual plaintiff. It is initially apparent that Thompson has no personal remedy for injuries suffered by the Covington Housing Development Corporation. See Mullins v. First National Exchange Bank of Virginia, W.D.Va., 275 F.Supp. 712, 721 (1967). Further, the deprivations allegedly inflicted upon the plaintiff individually are insufficient to justify retention of jurisdiction: the slanderous utterances on the part of the defendants do not evoke a cause of action under the Civil Rights Act, 42 U.S.C. § 1981 et seq.; Azar v. Conley, 6th Cir., 456 F.2d 1382, 1389 (1972); Church v. Hamilton, 3d Cir., 444 F.2d 105, 106 (1971); Hopkins v. Wasson, E.D.Tenn., 227 F.Supp. 278, 281 (1962), aff'd 6th Cir., 329 F.2d 67 (1964), cert. denied, 379 U.S. 854, 85 S.Ct. 102, 13 L.Ed.2d 57 (1964). The reference to discriminatory hiring is unsupported by factual allegations, Fletcher v. Hook, 3d Cir., 446 F.2d 14 (1971); Guedry v. Ford, 5th Cir., 431 F.2d 660 (1970), and of doubtful merit in view of the plaintiff's continued status with the housing authority.

An order will be entered sustaining the defendants' motion for summary judgment and dismissing the complaint.

* Consolidated with; Slappey Drive Industrial Park, Civ. 1084; Lake Park, Inc., Civ. 1101; Sherwood Acres, Inc., Civ. 1103; Forest Estates, Inc., Civ. 1111; Lake Park Additions, Inc., Civ. 1139; Pecan Haven, Inc., Civ. 1141; Emily Jean Haley, Civ. 1085; John W. and Katherine S. H. Crouch, Civ. 1100; Spencer C. Walden, Jr., Civ. 1102; Loretta Haley McKnight, Civ. 1112; and William T. Haley v. U. S., Civ. 1113.