## Commonwealth v. Aetna Life Ins. Co. of Hartford, Conn.

(Decided April 28, 1936.)

BAILEY P. WOOTTON, former Attorney General, B. M. VINCENT, Attorney General, and W. B. ARDERY, Commonwealth's Attorney, for the Commonwealth.

WILLIAM MARSHALL BULLITT for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Certifying the law.

The Ætna Life Insurance Company of Hartford, Conn., was indicted by the grand jury of Franklin county, Ky., charging it with the violation of the Lobbyist Act as provided in sections 1999a-1 and 1999a-5 of the Kentucky Statutes, and particularly the latter section, which reads:

"Within thirty days after the final adjournment of the legislature every person, corporation or association whose name appears upon the legislative docket of the session, shall file with the attorney general a complete and detailed statement sworn to before a notary public or the clerk of some court by the person making same, or in the case of a corporation by its president or treasurer, of all expenses paid or incurred by such person, corporation or association in connection with the employment of legislative counsel or agents, or in connection with the promoting or opposing in any manner the passage by the legislature of any legislation coming within the term of sec. 1999a-1 of

this act. Corporations and individuals within the provisions of this act shall render such accounts in such forms as shall be prescribed by the attorney general, and such reports shall be open to public inspection.''

The indictment charged that in April, 1934, the defendant employed G. Russell Churchill as legislative agent and counsel to represent the said corporation in connection with the regular 1934 session of the Legislature of the commonwealth of Kentucky and caused the said agent and counsel named to be registered and entered on the legislative docket in the office of the Attorney General of the Commonwealth of Kentucky, as a legislative agent and counsel of said corporation and thereafter unlawfully failed to file the statement of expenses, etc., as required by section 1999a-5 of the Statutes.

A trial was had and at the close of the evidence the court directed the jury to return a verdict in favor of the defendant and judgment was entered thereon dismissing the indictment. Complaining of this, the commonwealth has brought this apepal for a certification of the law.

It is urged for the commonwealth that the evidence is sufficient for a submission of the case to the jury and the court erred in directing a verdict for the defendant.

It was shown by the secretary to the Attorney General that Mr. Churchill made the following entry on the legislative docket, department of Attorney General, as follows:

"Name of employer—Ætna Life Insurance Co.

"Business address of employer — Hartford, Conn.

"Name of employee—G. Russell Churchill.

"Residence—Louisville.

"Occupation—General Agent.

"Date of employment—1911.

"Time employment to continue—continuous.

"Subject of legislation to favor (blank).

"Subject of legislation to oppose—old age pension bill.

"Term of employment ends (blank).

"Remarks—I have my initials there, M. L. H. showing he signed it."

It was further shown by this witness that the defendant failed to file the statement required by the Statutes. The only other witness introduced for the commonwealth was Mr. Churchill, agent for defendant. He testified that he was the general agent of the defendant company at the time he signed the docket in the manner above indicated, but did so on his own accord without the knowledge or consent of his employer, the defendant; that he incurred no expenses, or reported none to his company.

This is in substance all the evidence adduced by him on direct examination.

However, on cross-examination he testified as follows:

"Q. What are your duties as General Agent and what do you in point of fact do as General Agent of the Company? A. My position calls for the appointment of and supervision of agents in the territory that is assigned to me by the company; the looking after the business of the company that has been placed on the books; collecting premiums from my policyholders, and looking after our policyholders' interests in the territory.

"Q. Mr. Churchill, are you paid a salary by the Ætna Life Insurance Company for your services? A. No sir.

"Q. How do you obtain any compensation for your services as agent of the Ætna Insurance Company? * * * A. I receive a commission on such business as I may write personally; and then receive what is known as a collection fee on certain of our premium collections.

"Q. That is, you get a commission on the business that you do? A. Absolutely, commission basis. * * *

"Q. Did the Ætna Life Insurance Company employ you as Legislative agent or counsel? A. No sir.

"Q. Did the company ever employ you to rep-

resent them in connection with the regular 1934 session of the Legislature of Kentucky? A. No sir.

"Q. Did the Ætna Life Insurance Company cause you to register and enter on the Legislative docket that has been produced here your name and the other entries that are put on there? A. No sir.

"Q. Did the Ætna Life Insurance Company incur or pay any expenses in connection with you and any of the matters, so far as you know, connected with the regular Legislative session of 1934, or any of your acts? A. Absolutely not.

"Q. Did the Ætna Life Insurance Company pay you any compensation of any sort, directly or indirectly, for any services of yourself in connection with any Legislative session in Kentucky? A. No sir. * * *

"Q. Did you at any time come up to Frankfort in connection with that matter? A. Yes sir.

"Q. Did the Ætna Life Insurance Company request you to make that entry on the Legislative docket that has been identified? A. No sir. * * *

"Q. How did you come to sign that entry that is made on the book that has been identified? A. I think as a result of a discussion among several life insurance general agents who among us we agreed that it was the thing to do. Some one had said it was the thing to do, someone had said, 'When you got to Frankfort, be very careful to sign the book in the Attorney General's office,' I never knew the real reason why, but I just went with the others and we flocked in and signed it, is all.''

He further testified in substance that the bill pending before the Legislature proposed a certain tax on insurance premiums, which if passed would be against his interests, as he thought, as well as the interest of the company; that if the bill was passed he thought the company might withdraw business from the state which would result in the loss of his employment, and that he had a personal interest in the bill.

It was shown by Mr. Churchill's evidence without

contradiction that his duties and authority as agent for defendant company consisted of looking after life insurance policies, etc., as detailed by him, and that he had no instructions from the company to register its name upon the lobbyist docket or represent it as a lobbyist, and his act in so doing was a voluntary one on his part and unauthorized by the defendant. It is a well-known principle of law that corporations are bound by the acts of their agent only when such agent acts in the scope of his employment and authority or with the knowledge, consent, or directions of his principal, or by subsequent action the principal ratifies the act of the agent or acquiesces therein by receiving benefits or advantages arising therefrom. First National Bank v. Bryan, 215 Ky. 338, 285 S. W. 239.

We do not think that Mr. Churchill's employment as general agent of defendant to look after life insurance policies, collection of premiums, etc., for which he received a commission only authorized him to register the name of his employer on the legislative docket or to represent it as a lobbyist, and his act in so doing was wholly unauthorized by his employer, nor was it thereafter ratified or acquiesced in by the defendant in so far as the evidence discloses.

It follows from what has been said that the commonwealth failed to produce any evidence tending to establish the guilt of the defendant and the trial court did not err in directing a verdict in its favor.

Wherefore, the law is accordingly certified.

The whole court sitting.